**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MUNICIPAL WATER AUTHORITY OF )
WESTMORELAND COUNTY, ON )
BEHALF OF ITSELF AND ALL OTHERS )     Civ. Action No. 16-422
SIMILARLY SITUATED; )
                        )
        Plaintiff, )
                        )
    vs. )
                        )
CNX GAS COMPANY, L.L.C., NOBLE )
ENERGY, INC., )
                        )
        Defendants. )

## OPINION

CONTI, Chief District Judge

### I. Introduction

Pending before the court in this putative class action is a motion to remand (ECF No. 18) filed by plaintiff Municipal Water Authority of Westmoreland County ("Municipal Water Authority" or "plaintiff"). Defendant CNX Gas Company, L.L.C. ("CNX") and defendant Noble Energy, Inc. ("Noble Energy" and together with CNX, "defendants") removed this case to this court from the Court of Common Pleas of Westmoreland County under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). This court after hearing from the parties with respect to the motion to remand permitted Municipal Water Authority limited discovery of CNX and Noble Energy with respect to whether this court has subject-matter jurisdiction over this case.

Municipal Water Authority argues that this case should be remanded to state court because the local controversy exception to this court's subject-matter jurisdiction

under CAFA applies in this case. For the reasons set forth in this opinion, however, Municipal Water Authority did not satisfy its burden to show that more than two-thirds of the putative class—as plead in the complaint—are residents, let alone citizens, of Pennsylvania, which is a necessary element of the local controversy exception in this case. Municipal Water Authority is, therefore, not entitled to further jurisdictional discovery and its motion to remand will be denied.

## II. Procedural History

On April 11, 2016, CNX filed a notice of removal from the Court of Common Pleas of Westmoreland County. (ECF No. 1.) Attached to the notice of removal is a class action complaint filed by Municipal Water Authority against CNX and Noble Energy. (ECF No. 1-1) and an affidavit of Jason Mumford ("Mumford"), (the "Mumford affidavit"). (ECF No. 1-3.) Municipal Water Authority in the complaint sets forth the following counts against the following defendants:

- Count I—Breach of Contract under Pennsylvania common law against CNX;

- Count II—Breach of Contract under Pennsylvania common law against CNX;

- Count III—Conversion under Pennsylvania common law against CNX;
- Count IV—Breach of Contract under Pennsylvania common law against Noble Energy;

- Count V—Breach of Contract under Pennsylvania common law against Noble Energy; and

- Count VI—Conversion under Pennsylvania common law against Noble Energy.

(ECF No. 1-1.) Municipal Water Authority in paragraph 85 of the complaint defines the putative class as follows:

Every person who is, or has been, a royalty owner under an oil and gas lease in which (1) the original Lessee named on the lease was Dominion Exploration and Production, Inc. or Dominion Transmission, Inc.; (2) the present Lessee is CNX Gas, L.L.C. and/or Noble Energy, Inc.; and (3) natural gas has been produced under the lease.

(ECF No. 1-1 ¶ 85.)

On April 18, 2016, CNX filed a motion to dismiss the complaint and brief in support of the motion. (ECF Nos. 10, 11.) On the same date, Noble Energy filed a motion to dismiss and brief in support of the motion. (ECF Nos. 12, 13.) On April 20, 2016, Municipal Water Authority filed a motion to remand to state court and a brief in support of the motion. (ECF Nos. 18, 19.) On April 21, 2016, the court set a hearing on the motion to remand and stayed all other deadlines in the case, including deadlines with respect to the motions to dismiss pending before the court. (ECF Nos. 22, 23.) On May 11, 2016, defendant Noble Energy joined in the brief in opposition to the motion to remand filed by CNX. (ECF No. 25.) On June 7, 2016—at the request of the court— plaintiff filed a reply brief with respect to its motion to remand. (ECF No. 29.)

On June 13, 2016, the court held a hearing on the motion to remand. (H.T. 6/13/16 (ECF No. 39).) The court held on the record that defendants met their burden to prove a basis for federal jurisdiction under CAFA. (H.T. 6/13/16 (ECF No. 39) at 4-5.) The issue before the court at the hearing was whether Municipal Water Authority "brought forth sufficient facts for the Court to decline to exercise jurisdiction," i.e., whether the local controversy exception to CAFA applies in this case. (Id. at 6.) Defendants argued that:

- the class definition in the complaint included class members who were owners of royalties under oil and gas leases for oil and gas wells located outside Pennsylvania;

–   more than two-thirds of those wells were located outside Pennsylvania; and

–   under those circumstances, Municipal Water Authority could not satisfy its burden to show that more than two-thirds of the putative class members were citizens of Pennsylvania at the time of removal.

(<u>Id.</u> at 8-9.)

Municipal Water Authority argued in response that it was entitled to jurisdictional discovery to determine whether the assertions made by counsel for defendants were correct, i.e., that more than two-thirds of the leases implicated by the class definition were for wells located outside Pennsylvania. (<u>Id.</u> at 9-10.) The court explained that if the evidence showed that even half the leases implicated by the class definition were for wells located outside Pennsylvania, it would not—in light of the "substantial burdens" placed upon defendants—permit Municipal Water Authority further jurisdictional discovery to attempt to prove the putative class members who owned those leases were citizens of Pennsylvania at the time the action was removed to this court. (<u>Id.</u> at 13-14.) The court permitted Municipal Water Authority to propound ten interrogatories on CNX and Noble Energy, and scheduled a telephone conference for July 27, 2016, for Municipal Water Authority to inform the court about whether it—based upon defendants' responses to the ten interrogatories—intended to proceed with its motion to remand. (<u>Id.</u> at 14-19.)

At the hearing held on July 27, 2016, Municipal Water Authority conceded that the evidence produced by defendants showed that if the court considered only the class definition set forth in paragraph 85 of the complaint, Municipal Water Authority could not satisfy its burden to show that more than two-thirds of the putative class are citizens of Pennsylvania. Municipal Water Authority argued that the court should consider the

4

entirety of the complaint to determine the scope of the class as defined at the time of removal, and a reading of the entirety of the complaint showed that the putative class was limited to persons who owned royalties under Pennsylvania leases. Defendants argued that at the June 13, 2016, hearing, Municipal Water Authority conceded that the class definition set forth in the complaint included persons who owned royalties under oil and gas leases for wells located in states other than Pennsylvania. The court on the record at the July 27, 2016, hearing held that before proceeding further in this case it had to resolve whether it could consider the entirety of the complaint to determine the applicable class definition or if its review was limited to the formal class definition set forth in paragraph 85 of the complaint. Resolution of that issue is dispositive with respect to whether: (1) Municipal Water Authority is entitled to further discovery about the putative class members' citizenship; and (2) whether Municipal Water Authority can satisfy its burden to show that the local controversy exception to this court's subject-matter jurisdiction under CAFA applies in this case.

### III.    Factual Allegations in the Complaint

#### A. The Parties

Municipal Water Authority's principal place of business is located in New Stanton, Pennsylvania. (ECF No. 1-1 ¶ 1.) CNX's principal place of business is located in Canonsburg, Pennsylvania. (Id. ¶ 2.) Noble Energy's principal place of business if located in Houston, Texas. (Id. ¶ 3.)

#### B. The Natural Gas Industry

Natural gas producers produce gas from wells and transport the gas through "gathering" lines to the interstate pipeline system. (ECF No. 1-1 ¶ 4.) Producers sell the

gas either at the point where the gathering line meets the interstate pipeline system or at any one of thousands of receipt and delivery points on the interstate pipeline system. (Id.) To produce gas, gas producers enter into oil and gas leases with the owners of the gas rights. (Id. ¶ 5.) Under such leases, the owner of the gas rights (the lessor) conveys those rights to the producer (the lessee) in exchange for a royalty on the gas produced and sold each month. (Id.) Natural gas royalties are calculated by multiplying the volumes of gas produced each month (in units of a thousand cubic feet or "mcf") times the sale price and dividing that amount by the royalty interest. (Id. ¶ 6.)

Gas producers incur "post production costs," these being costs incurred between the well head and the point of sale. (ECF No. 1-1 ¶ 9.) Post production costs include the costs of gathering, compression, processing, treatment, dehydration, marketing and interstate transportation. (Id.)

### C. Municipal Water Authority's Oil and Gas Lease

Beginning in or about the year 2000 and continuing through the year 2009, Dominion Exploration and Production, Inc. ("Dominion Exploration") and Dominion Transmission, Inc. ("Dominion Transmission"), two affiliated gas production companies, entered into oil and gas leases with thousands of landowners in Pennsylvania. (ECF No. 1-1 ¶ 11.) On or about January 1, 2002, Municipal Water Authority entered an oil and gas lease (the "Lease") with Dominion Exploration in which it leased its oil and gas rights to 2,255.199 acres in Westmoreland County, Pennsylvania (the "Leased Premises"). (Id. ¶ 12.) The Lease provides for a royalty on gas sold "at the well" of "one-eighth of the amount realized by Lessee from such sale" and on gas "used

or sold beyond the well" of "one eighth of the net amount realized by Lessee computed at the wellhead from the sale of such substances." (Id. ¶ 13.)

Dominion Exploration began producing gas under the Lease some time during the year 2002, and continued to produce gas under the Lease until March 4, 2010, when all of Dominion Exploration's leases in Pennsylvania were acquired by Consol Gas Company through a merger with Dominion Exploration. (ECF No. 1-1 ¶ 14.) Dominion Exploration did not deduct post-production costs from the royalties paid to Municipal Water Authority under the Lease. (Id. ¶ 15.) Dominion Exploration did not deduct post-production costs from the royalties paid to any other royalty owner under any of its other oil and leases in Pennsylvania. (Id. ¶ 16.)

### D. Acquisition of Dominion Exploration Leases by Consol Gas Company

On March 4, 2010, Dominion Resources, Inc., ("Dominion Resources") and Dominion Energy, Inc. ("Dominion Enegery"), which are parent companies or affiliates of Dominion Exploration, entered into a Purchase and Sale Agreement with Consol Energy Holding LLC ("Consol Energy"), under which Dominion Resources and Dominion Energy sold, transferred, and otherwise assigned certain assets to the Consol Energy, including all of the oil and gas producing properties, leases, and wells, owned and operated by Dominion Exploration and other Dominion entities and affiliates in Pennsylvania. (ECF No. 1-1 ¶ 17.) Dominion Exploration merged with Consol Gas Company ("Consol Gas") and, effective April 30, 2010, Consol Gas became the lessee on all Dominion Exploration leases sold under the Purchase and Sale Agreement. (Id. ¶ 18.)

Consol Gas continued to produce gas from the wells previously drilled by Dominion Exploration in Pennsylvania. (ECF No. 1-1 ¶ 19.) In July 2010, Consol Gas

drilled wells into the Marcellus Shale Formation ("Marcellus wells"), including wells on the Leased Premises under the Lease. (<u>Id.</u> ¶ 19.) Consol Gas continued to produce gas and pay royalties under the leases it had acquired from Dominion Exploration, including on the Lease, until Consol Gas merged with the CNX on January 1, 2011. (<u>Id.</u> ¶ 20.) Consol Gas did not deduct post- production costs from the royalties paid to Municipal Water Authority under the Lease during any month it was the lessee. (<u>Id.</u> ¶ 21.) Consol Gas did not deduct post-production costs from the royalties it paid to any other royalty owner under any of the other leases it acquired from Dominion Exploration. (<u>Id.</u> ¶ 22.)

### E. Acquisition of Leases by Defendant CNX Gas

On or about January 1, 2011, Consol Gas merged with CNX. (ECF No. 1-1 ¶ 23.) Pursuant to the merger, CNX became the lessee on all leases that Consol Gas acquired through its merger with Dominion Exploration. (<u>Id.</u>) On or about January 1, 2011, Dominion Transmission entered into an Assignment and Bill of Sale with CNX which assigned and sold to CNX numerous Dominion Transmission leases which contain the same or similar royalty provisions as in the Lease. (<u>Id.</u>) The former Dominion Exploration leases acquired by CNX through its merger with Consol Gas, including the Lease, and the Dominion Transmission leases assigned to CNX by Dominion Transmission are collectively referred to in the complaint as the "Class Leases." (<u>Id.</u>)

### F. The CNX Gas - Noble Energy JOA

On or about September 30, 2011, CNX and Noble Energy entered into a Joint Operating and Development Agreement ("JOA") to develop natural gas in Pennsylvania. (ECF No. 1-1 ¶ 24.) As part of the JOA, CNX assigned, transferred and sold to Noble

Energy an undivided 50% interest in the Class Leases. (Id. ¶ 25.) In or about November 2012, Noble Energy began paying royalties under the Class Leases based upon its undivided 50% interest in the Class Leases. (Id. ¶ 26.)

### G. Defendants' Deduction of Post Production Costs

From January 2011 through October 2011, CNX did not deduct post-production costs from the gas royalties. (ECF No. 1-1 ¶ 27.) On or about September 30, 2011, CNX and Noble Energy entered into a "Gas Gathering Agreement" with Cone Gathering, L.L.C. ("Cone Gathering"), a company in which they each are 50% owners. (Id. 28.) Cone Gathering provides midstream gas gathering services to CNX and Noble Energy through Cone Midstream Partners L.P., a partnership in which CNX, Noble Energy, and Cone Gathering each have a controlling interest. (Id. ¶ 29.)

In November 2011, CNX began deducting post-production costs from gas produced under the Class Leases, including the Lease. (ECF No. 1-1 ¶ 30.) In November of 2012, Noble Energy began paying royalties to the putative Class Members, including Municipal Water Authority, based upon its undivided 50% interest in the Class Leases, but did not deduct any post-production costs from the first royalty payment. (Id. ¶ 31.) Beginning with the next royalty payment on January 25, 2013, however, Noble Energy deducted post-production costs, and retroactively charged Municipal Water Authority post-production costs back to November 2012. (Id. ¶ 32.)

The post production costs deducted by CNX and Noble Energy included: (1) a gas gathering fee of $0.46 per mcf; (2) a charge for electricity allegedly used to power compressors on the gas gathering system; and (3) a "Lease Use" fee. (ECF No. 1-1 ¶ 33.) According to Municipal Water Authority, the costs deducted by CNX and Noble Energy

were not properly deductible under the leases by operation of certain doctrines of: (1) novation; (2) modification by course of conduct and performance; (3) waiver; and (4) equitable estoppel. (Id. ¶ 35.) Municipal Water Authority specifically alleges:

> No post production costs were deductible from the royalties paid under the Class leases because no post production costs were deducted by the original lessees, Dominion Exploration and Dominion Transmission, or by their successors, Consol Gas Company and Defendant CNX Gas until November of 2011, when Defendant CNX Gas first began to deduct them.
> ...
> The Class Leases were modified by the course of performance and conduct under the leases prior to November of 2011.
> ...
> There was a novation of the Class Leases by the pre-November 2011 course of performance and conduct under the leases and this novation precludes the deduction of any post production costs from the royalties.

(ECF No. 1-1 ¶¶ 38-40.) Municipal Water Authority alleges that under the foregoing circumstances, CNX breached the Class Leases by deducting post-production costs from the royalties, CNX is barred by the doctrine of waiver from deducting any post-production costs from the Class Leases by course of performance, and CNX is equitably estopped from deducting any post-production costs by course of performance. (Id. ¶¶ 41-43.) Municipal Water Authority alleges that it suffered $2,079,570 in damages as a result of CNX's conduct. (Id. ¶ 44.)

Municipal Water Authority alleges in the alternative that even if the leases permitted CNX and Noble Energy to deduct post-production costs under the leases, the costs they deducted were unreasonable, excessive or for services that were not provided. (Id. ¶ 36.)

Municipal Water Authority's claim of conversion against CNX is based upon CNX "convert[ing] a portion of the gas royalties owned by Plaintiff and the other Class Members by deducting post production costs that were not deductible,...and/or by

deducting post production costs that were excessive, unreasonable, or for services never provided, as set forth in Count II herein." (Id. ¶ 55.)

Municipal Water Authority's claims against Noble Energy mirror its claims for breach of contract and conversion against CNX. (ECF No. 1-1 ¶¶ 60-82.)

### H. **Class Allegations**

Municipal Water Authority defines the putative class as follows:

> Every person who is, or has been, a royalty owner under an oil and gas lease in which (1) the original Lessee named on the lease was Dominion Exploration and Production, Inc. or Dominion Transmission, Inc.; (2) the present Lessee is CNX Gas, L.L.C. and/or Noble Energy, Inc.; and (3) natural gas has been produced under the lease.

(ECF No. 1-1 ¶ 85.) Municipal Water Authortiy alleges that the class members' "number and identities are currently unknown to Plaintiffs, but are known to Defendants as reflected in their business records, and in the records of the Office of the Recorder of Deeds of Westmoreland, County Pennsylvania and other Counties in the Commonwealth of Pennsylvania." (Id. ¶ 86.) According to Municipal Water Authority, the Court of Common Pleas of Westmoreland County "is an appropriate forum because the named Plaintiffs' [sic] oil and gas lease was entered into and recorded in Westmoreland County, Pennsylvania and a vast majority of the Plaintiff Class resides in Westmoreland County and other counties in Western Pennsylvania." (Id. ¶ 93.)

### IV. **Mumford Affidavit**

The Mumford affidavit attached to the notice of removal filed by CNX provides:

– Mumford is the assistant corporate controller for CONSOL Energy, the parent company of CNX (ECF No. 1-3 ¶ 2);

– Mumford is "responsible for and [has] personal knowledge of the accounting for oil and gas production, including the accounting relating to royalty interests

associated with oil and gas production, under oil and gas leases operated or administered by CNX" (Id.);

– "CNX's business and accounting records, for the month of January 2016, CNX deducted over $2 million in postproduction costs from the royalties paid to the putative class members as defined in the Complaint" (Id. ¶ 6); and

– "[T]here are over 100 persons who meet the putative class definition" (Id. ¶ 7.)

## V. Applicable Law with respect to Removal, Remand, and The Class Action Fairness Act

### A. Removal

"[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

"[T]he burden of establishing removal jurisdiction rests with the defendant." Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 359 (3d Cir. 1995). "Defendants must also establish that all pertinent procedural requirements for removal have been met." A.R. v. Norris, Civ. Action No. 15-1780, 2015 WL 6951872, at *1 (M.D. Pa. Nov. 10, 2015) (citing Shadie v. Aventis Pasteur, Inc., 254 F.Supp.2d 509, 514 (M.D. Pa. 2003)).

### B. Remand

"Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court." McGuire v. Safeware, Inc., Civ. Action No. 13-3746, 2013 WL 5272767, at * 1 (E.D. Pa. Sept. 17, 2013) (citing Cook v. Soft Sheen Carson, Inc., Civ. Action No. 08-1542, 2008 WL 4606305, at*1 (D.N.J. Oct. 15, 2008)).

"Cases may be remanded under § 1447(c) for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." <u>PAS v. Travelers Ins. Co.</u>, 7 F.3d 349, 352 (3d Cir. 1993).[1] "It is settled that the removal statutes ... are to be strictly construed against removal and all doubts should be resolved in favor of remand." <u>Steel Valley Auth. v. Union Switch and Signal Div.</u>, 809 F.2d 1006, 1010 (3d Cir.1987) (footnote omitted).

### C. Class Action Fairness Act

CNX filed its notice of removal in this case under CAFA. (ECF No. 1 ¶ 6.) The Court of Appeals for the Third Circuit has explained:

> The Class Action Fairness Act of 2005 (CAFA) confers jurisdiction on federal courts over certain class actions in which any defendant and any class member are citizens of different states. 28 U.S.C. § 1332(d)(2). CAFA further enables any defendant to remove a qualifying class action to federal court. Id. § 1453(b). Under CAFA's "local controversy" exception, however, a federal court must decline jurisdiction if certain conditions are met, including that a super-majority of the members of the putative class and at least one significant defendant are from the state in which the class action was originally filed. 28 U.S.C. § 1332(d)(4)(A).
>
> ...
>
> One purpose of CAFA was to provide for "[f]ederal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2, Pub.L. 109–2, 119 Stat. 4.

---

[1]    The court in <u>A.R.</u> explained:

The decision to enter a remand order on the basis of a defect in removal procedure or for a lack of subject matter jurisdiction is within the discretion of the district court, and, whether erroneous or not, is not subject to appeal. <u>Cook</u>, 320 F.3d at 437 (citing <u>Quackenbush</u>, 517 U.S. at 711-12). The United States Supreme Court has noted that limiting review of remand orders supports "Congress's longstanding policy of not permitting interruption of the litigation of the merits of a removed case."<u>Powerex Corp. v. Reliant Energy Svcs., Inc.</u>, 551 U.S. 224, 238 (2007).

<u>A.R.</u>,2015 WL 6951872, at *2.

Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 147, 149 (3d Cir. 2009).

CAFA, 28 U.S.C. § 1332(d)(2), provides:

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2).

As the "party asserting federal [subject-matter] jurisdiction in [this] removal case," defendant bears the burden of proving the case is "properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir.2007) (citing Samuel–Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir.2004)); Morgan v. Gay, 471 F.3d 469, 473 (3d Cir.2006). "This includes the burden of establishing that all three criteria of CAFA are met, i.e., [minimal] diversity of citizenship, [an] amount in controversy [exceeding] $5,000,000, and a class size of at least [one hundred] members." Lewis v. Ford Motor Co., 610 F.Supp.2d 476, 480 (W.D. Pa. 2009) (citing Frederico, 507 F.3d at 193).

There are two exceptions to a district court having subject-matter jurisdiction over class actions in which any defendant and any class member are citizens of different states, which are set forth in 28 U.S.C. § 1332(d)(4). Section 1332(d)(4) provides:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—

(A)(i) over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4). The Third Circuit Court of Appeals has explained:

CAFA...contains two mandatory exceptions from federal jurisdiction, §§ 1332(d)(4)(A) & (B). These two exceptions require a district court to decline jurisdiction when the controversy is uniquely local and does not reach into multiple states. Subsection (A), the "local controversy" exception, may apply when at least one significant defendant and more than two-thirds of the members of the putative classes are local. Subsection (B), the "home-state" exception, may apply when the primary defendants and at least two-thirds of the members of the putative classes are local.

Kaufman, 561 F.3d at 149.

"[O]nce CAFA jurisdiction has been established, the burden shifts to the party objecting to federal jurisdiction to show that the local controversy exception should apply." Kaufman, 561 F.3d at 153 (citing Serano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680 (7th Cir. 2006); Frazier v. Pioneer Ams. LLC, 455 F.3d 542, 546 (5th Cir. 2006); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1165 (11th Cir. 2006)). In other words, plaintiffs in a class action based upon diversity of the parties bear "the burden of establishing that the local controversy exception applies." Kaufman, 561 F.3d at 153. "[T]his burden-shifting approach is justified by analogy to practice under the removal statute, 28 U.S.C. § 1441(a)." Kaufman, 561 F.3d at 154 (citing Serano, 478 F.3d at 1023-24; Hart, 457 F.3d at 680). Indeed, "'there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception.'" Kaufman, 561 F.3d at 154 (quoting Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691, 698 (2003)).

"The party seeking to invoke an exception bears the burden of proving by a preponderance of the evidence that the exception applies." Vodenichar v. Halcon Energy Properties, Inc., 733 F.3d 497, 503 (3d Cir. 2013). The court "may consider pleadings as well as evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies." Id. at 503 n.1. The Third Circuit Court of Appeals has explained that courts frequently consider *evidence* with respect to determining the citizenship of the parties. Id. (citing Coleman v. Estes Express Lines, Inc., 631 F.3d 1010, 1015-17 (9th Cir. 2011) (relying solely on the pleadings to evaluate the "significant relief" and "significant basis of the claims" factors under the local

controversy exception, but considering external evidence to determine the "citizenship" factor); <u>Coffey v. Freeport McMoran Copper & Gold</u>, 581 F.3d 1240, 1246 (10th Cir. 2009) (looking to the total activity of a company to determine the "citizenship" factor).

The legislative history of CAFA, however, cautions against "substantial, burdensome discovery on jurisdictional issues." Judiciary Committee Report on Class Action Fairness Act, S.Rep. No. 109-14, at 44 (1st Sess. 2005). The Judiciary Committee explained:

> The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Committee further understands that in some instances, limited discovery may be necessary to make these determinations. However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions. For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified. Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.

<u>Id.</u>

## VI. Analysis

### A. Defendants have the burden to prove by a preponderance of the evidence that this court has subject-matter jurisdiction under CAFA.

Defendants must prove by a preponderance of the evidence that: (1) any class member is a citizen of a state different from any defendant; (2) the amount in controversy exceeds $5,000,000; and (3) the class exceeds one hundred members.

Lewis, 610 F.Supp.2d at 480. As the court explained on the record at the hearing held on June 13, 2016, defendants in this case met their burden to prove the following elements, i.e., that this court has subject-matter jurisdiction over this case under CAFA. (H.T. 6/13/16 (ECF No. 39) at 5-6.)  The burden of proof, therefore, shifted to Municipal Water Authority to prove by a preponderance of the evidence that one of the exceptions to this court's subject-matter jurisdiction applies to this case.

### B. Municipal Water Authority has the burden to prove by a preponderance of the evidence the local controversy[2] exception to this court's subject-matter jurisdiction under the CAFA.

The Third Circuit Court of Appeals has explained:

> A party seeking to invoke this exception must therefore show that: (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

> These elements ensure that the exception is invoked when the class is primarily local, the lawsuit is against "at least one real in-state defendant whose alleged conduct is central to the class claims and from whom the class seeks significant relief," the injuries the defendant allegedly caused occurred within the forum, and no other similar class actions have been filed against any of the defendants. 151 Cong. Rec. S999–02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter).

---

[2] Municipal Water Authority does not argue that the home state exception applies to this case and agreed with the court at the hearing on June 13, 2016, that the only issue before the court is whether the local controversy exception applies to this case. (H.T. 6/13/16 (ECF No. 39) at 7-8.)

<u>Vodenichar v. Halcon Energy Properties, Inc.</u>, 733 F.3d 497, 506-07 (3d Cir. 2013). Municipal Water Authority must prove each of the foregoing elements by a preponderance of the evidence. <u>Id.</u> at 503.

The court's inquiry at the hearings held on June 13, 2016, and July 27, 2016, hearing concerned the first element of the local controversy exception, i.e., whether at the time the case was removed, greater than two-thirds of the putative class were citizens of the state in which the action was originally filed. That issue will be largely resolved by determining whether the class is limited to persons who owned royalties under oil and gas leases for oil and gas wells located in Pennsylvania ("Pennsylvania leases").

### 1. Allegations in the complaint with respect to the location of the wells vis-a-vis the class definition in paragraph 85 of the complaint and evidence related to that definition

Municipal Water Authority in the complaint alleges:

– from 2000 through 2009, Dominion Exploration and Production, Inc. ("Dominion Exploration") and Dominion Transmission, Inc., "two affiliated gas productions companies, entered into oil and gas leases with thousands of landowners in Pennsylvania;" (<u>Id.</u> ¶ 11);

– on March 4, 2010, "Dominion Exploration's leases in Pennsylvania were acquired by Consol Gas Company through a merger with Dominion Exploration" (<u>Id.</u> ¶¶ 14, 17);

– Dominion Exploration did not deduct "production costs from the royalties paid to any other royalty owner under any of its other oil and gas leases in Pennsylvania" (<u>Id.</u> ¶ 16);

– "Consol Gas continued to produce gas from the wells previously drilled by Dominion Exploration in Pennsylvania" (<u>Id.</u> ¶ 19);

– "[o]n or about September 30, 2011, the Defendants CNX Gas and Noble entered into a Joint Operating and Development Agreement ("JOA") to develop natural gas in Pennsylvania" (<u>Id.</u> ¶ 24);

- "[u]nder Pennsylvania law, the royalties owned by Plaintiff and the other Class Members and held by Defendant CNX Gas, were and are the personal property of Plaintiff and the other Class Members" (Id. ¶ 54); and

- "[t]he conversion claims in this Complaint are actionable by all of CNX Gas's Pennsylvania royalty owners, regardless of the form of lease" (Id. ¶ 56); and

- "a vast majority of the Plaintiff Class resides in Westmoreland County and other counties in Western Pennsylvania. (Id. ¶ 93.)

Municipal Water Authority in paragraph 85 of the complaint defines the putative class as follows:

> Every person who is, or has been, a royalty owner under an oil and gas lease in which (l) the original Lessee named on the lease was Dominion Exploration and Production, Inc. or Dominion Transmission, Inc.; (2) the present Lessee is CNX Gas, L.L.C. and/or Noble Energy, Inc.; and (3) natural gas has been produced under the lease.

(ECF No. 1-1 ¶ 85.)

Municipal Water Authority argued at the hearing on June 13, 2016, that the class definition set forth in paragraph 85 of the complaint must be read along with the allegations set forth throughout the complaint to show that the class is comprised of only persons who are owners of royalties under leases for gas wells located in Pennsylvania. Based upon that argument, Municipal Water Authority asserted that it met its burden to prove by a preponderance of the evidence that more than two-thirds of the class members are citizens of Pennsylvania. (ECF No. 19 at 6.) Municipal Water Authority argued that to the extent CNX or Noble Energy disputes that more than two-thirds of the class members are citizens of Pennsylvania, Municipal Water Authority should be permitted to take limited discovery because: (1) "[d]efendants can easily identify the citizenship of each Class Member because they mail the royalty checks to them;" and (2) as evidenced by the Mumford affidavit CNX "knows the members of the

Plaintiff Class because it has calculated the post production costs deducted from the Class Leases in January of 2016." (ECF No. 19 at 17.)

CNX argued in response that Municipal Water Authority did not satisfy its burden because the class definition in the complaint is "not limited to royalty owners who are citizens of Pennsylvania or even to royalty owners under leases of oil and gas rights located in Pennsylvania," and, Municipal Water Authority did not offer any evidence[3] with respect to the citizenship of the putative class. (ECF No. 24 at 5-6.) CNX argued that the class as defined in paragraph 85 may include "royalty owners who leased oil and gas rights located in states other than Pennsylvania and who are not citizens of Pennsylvania, royalty owners who lease oil and gas rights located in Pennsylvania who were but no longer are citizens of Pennsylvania, and royalty owners who lease oil and gas rights located in Pennsylvania but never were citizens of Pennsylvania." (Id. at 5.)

At the hearing on June 13, 2016, the court—in consideration of the foregoing arguments—permitted Municipal Water Authority limited discovery with respect to the locations of the wells referred to in the class definition in paragraph 85 of the complaint. The court instructed that if the evidence produced showed that at least half the wells were located outside Pennsylvania, and the class was not limited to owners of royalties

---

[3]       The general rule provides that this court cannot grant Municipal Water Authority's motion to remand if Municipal Water Authority failed to present *any* evidence with respect to the domicile or citizenship of the members of the putative class. In Anthony v. Small Tube Manufacturing Corporation, the plaintiff in its motion to remand based upon the CAFA exceptions "relied entirely" on its allegations with respect to its citizenship and arguments in its brief about the putative class members' citizenship. Anthony v. Small Tube Mfg. Corp., 535 F.Supp.2d 506, 517 (E.D. Pa. 2007). The court explained that although reasonable inferences may be drawn about the putative class members' citizenships from the allegations in the complaint, the allegations and reasonable inferences drawn therefrom do not satisfy a plaintiff's burden of proof. Id. at 517.

under Pennsylvania leases, Municipal Water Authority would not be permitted additional discovery to prove that greater than two-thirds of the putative class were citizens of Pennsylvania at the time of removal.

At the hearing held on July 27, 2016, Municipal Water Authority informed the court that the evidence produced by defendants showed that if the court considered only the class definition set forth in paragraph 85 of the complaint, it could not meet its burden to show that greater than two-thirds of the putative class were citizens of Pennsylvania at the time of removal.

### 2. Municipal Water Authority's arguments with respect to the class definition set forth in the complaint

Municipal Water Authority at the hearing on July 27, 2016, argued that—contrary to defendants' assertions and the court's preliminary assessment—the putative class definition set forth in the complaint at the time of removal was limited to persons who were owners of royalties under Pennsylvania leases. According to Municipal Water Authority, the court should consider the entirety of the complaint to determine the applicable putative class definition and should not limit its reading to paragraph 85, as defendants suggest. Municipal Water Authority argued that because the putative class definition is limited to persons who are owners of royalties under Pennsylvania leases, it is entitled to further discovery to determine the citizenship of those persons. CNX argued, however, that "[t]he Court must determine whether remand is necessary under the local controversy exception based on the definition of the putative class alleged in the Complaint, and not on unsupported allegations that are inconsistent with that definition." (ECF No. 24 at 7 (citing <u>Arbuckle Mt. Ranch of Texas, Inc. v. Chesapeake Energy Corp.</u>, 810 F.3d 335, 340 (5th Cir. 2016).) Municipal Water Authority has the

better view with respect to whether the court may consider the entirety of the complaint to determine the applicable putative class definition at the time of removal; indeed, the decision cited by defendants—Arbuckle—supports Municipal Water Authority's position with respect to that issue.

The court in Arbuckle analyzed whether the local controversy exception to CAFA jurisdiction applied, and "how to construe the class definition" in the plaintiff's petition with respect to that issue. Arbuckle, 810 F.3d at 339. The court acknowledged that "[t]he class definition issue is critical to determine whether the local controversy exception applies" and narrowed its focus to "whether the proposed class include[d] more than two-thirds Texas citizens." Id. at 338.

The plaintiff in Arbuckle argued the court should consider the "narrow definition" of the class set forth in paragraph 14 of the complaint, which included "*only current* owners of mineral interests." Id. at 339. The defendant argued the court should consider "the broad definition" set forth in "the formal description of the class" in the complaint, i.e., paragraph 23, which included "*all current and former* owners of mineral interests since the foreclosure actions in 2004." Id. at 339. The court explained that the plaintiff—who had the burden to prove by a preponderance of the evidence that the local controversy exception applied—satisfied its burden to show that more than two-thirds of the class as set forth in the *narrow* definition were Texas citizens at the time of removal. Id. The plaintiff, however, failed to present any evidence "about those owners who purchased mineral interests post-foreclosure but have since sold or otherwise relinquished their interests." Id. The plaintiff under those circumstances could not

satisfy its burden to show that more than two-thirds of the putative class as defined in the *broad* definition were citizens of Texas. Id.

The district court in Arbuckle adopted the narrow definition of the putative class. Arbuckle, 810 F.3d at 340. The district court "characterized paragraph 23's broader definition as a mere 'pleading error,' and held 'the totality of the pleadings makes it clear that [the plaintiff is] talking about current owners.'" Id. The Court of Appeals for the Fifth Circuit agreed with the parties and district court that the narrow definition and broad definition were "in direct conflict with one another." Id. The court of appeals was not persuaded by the plaintiff's argument that the narrow definition should control because it appeared earlier in the petition; rather, the court found the *purpose* of the paragraphs was important and recognized that the broad definition was placed in the paragraph of the petition that formally defined the class. Id. The court explained that "[i]f either paragraph is to be given greater weight, it ought to be the paragraph that contains what the plaintiff has declared is the class definition." Id. Based upon the foregoing, the court of appeals found the broad definition had "the stronger claim to being authoritative." Id.

The court of appeals' analysis, however, did not end there. The court then considered "the petition as a whole," explaining "[u]nder the federal rules, we construe pleadings in their entirety when assessing their sufficiency." Arbuckle, 810 F.3d at 340 (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)). The court also explained that under Texas state law, "pleadings must give an opponent fair notice of the plaintiff's claims after looking at the allegations as a whole." Arbuckle, 810 F.3d at 340-41 (citing Dallas Area Rapid Transit v. Morris, 343 S.W.3d 752, 760 (Tex.

24

App. Dall. 2014)). The court analyzed the entirety of the plaintiff's petition and concluded that "[t]he petition is ambiguous" and contains "two equally plausible class size definitions." Arbuckle, 810 F.3d at 341.

The court of appeals emphasized that the plaintiff had the burden to prove the local controversy exception applied to its case, and that the court must "resolve lingering doubts in favor of exercising federal jurisdiction when an exception to jurisdiction is asserted." Arbuckle, 810 F.3d at 343 (citing Hood ex rel. Miss. V. JP Morgan Chase & Co., 737 F.3d 78, 84-85 (5th Cir. 2013); Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc., 655 F.3d 358, 360 (5th Cir.2011)). The court held:

> Arbuckle's petition contains two conflicting class definitions. After reviewing Arbuckle's petition, the parties' briefs, and the record, we have no basis to conclude the class is only of current owners, or conversely that it covered all post-foreclosure owners including interim owners. Further, plaintiffs concede there is no evidence that, under the broad definition, over two-thirds of the class are Texas citizens.

> Because the class that the petition at the time of removal sought to have certified is not clearly limited to current owners, and with inadequate evidence of the citizenship of the interim owners in the broader class, Arbuckle has not proven that the exception for local controversies applies.

Arbuckle, 810 F.3d at 343.

Accordingly, Arbuckle does not stand for the proposition that a court is constrained to consider only the formal class definition, e.g., paragraph 85 in this case, set forth in the pleadings to define a class. In Arbuckle, the court: (1) determined the petition contained conflicting class definitions; (2) reviewed the entirety of the petition; and (3) determined the petition was ambiguous with respect to which class definition controlled. The court reasoned that because a plaintiff has the burden of proof to prove the local controversy applies to a case, ambiguities should be resolved against the

plaintiff and in favor of the defendant. The court held that under those circumstances, the plaintiff did not satisfy its burden to prove that it was more likely than not that greater than two-thirds of the putative plaintiff class were citizens of Texas, i.e., that the narrow class definition was controlling in that case.

Applying a similar analysis to this case, it is clear that the class definitions advanced by Municipal Water Authority and defendants are in conflict with each other. Upon review of the entirety of the complaint in this case, this court must conclude that the complaint is ambiguous with respect to which class definition controls. Municipal Water Authority argues the class is limited to persons who were owners of royalties under Pennsylvania leases and cites to various paragraphs of the complaint in support of its argument. (ECF No. 1-1 ¶¶ 11, 14, 16, 17, 19, 24, 54, 56, 93.) If the broader class definition is applicable, the evidence produced by defendants shows that Municipal Water Authority cannot satisfy its burden to show that greater than two-thirds of the putative class as defined in paragraph 85 were citizens of Pennsylvania at the time of removal. (ECF No. 1-1 ¶ 85.)

Municipal Water Authority, like the plaintiff in Arbuckle, has the burden of proof to show that the local controversy exception applies in this case. Here, there are ambiguities with respect to which class definition controls and construing these ambiguities in favor of defendants requires this court to conclude that the broader definition in paragraph 85 controls. Arbuckle, 810 F.3d at 343; Kaufman, 561 F.3d at 153. The putative class as defined in the complaint at the time of removal is not clearly limited to residents of Pennsylvania. Municipal Water Authority did not otherwise set forth any evidence to show that more than two-thirds of the putative class as defined in

paragraph 85, i.e., the broader definition, are citizens of Pennsylvania, and the local controversy exception will not apply here. Because Municipal Water Authority did not satisfy its burden to show that the local controversy exception applies in this case, the court need not analyze whether Municipal Water Authority satisfied its burden with respect to the other elements of the local controversy exception.

Under those circumstances, and in accordance with the court's instructions given at the June 13, 2016, hearing, because the class is not limited to owners of royalties under Pennsylvania leases, the court will not permit Municipal Water Authority additional discovery to prove that more than two-thirds of the members of the putatives class are citizens of Pennsylvania. The motion to remand will be denied.

### V. Conclusion

The complaint is ambiguous with respect to whether the leases in issue were limited to leases related to wells located in Pennsylvania. Ambiguities are resolved in favor of defendants, and the court concludes the class must be defined as set forth in paragraph 85 of the complaint. At the hearing held on June 13, 2016, this court noted that if the evidence produced by defendants showed that even half the gas wells implicated by the putative class definition set forth in paragraph 85 of the complaint were located outside Pennsylvania, Municipal Water Authority would not be entitled to additional discovery to prove that the local controversy exception applies in this case. Municipal Water Authority conceded on the record at the July 27, 2016, hearing, that— based upon the evidence produced with respect to the putative class definition set forth in paragraph 85—it could not satisfy its burden to show that the local controversy exception applies to this court's subject-matter jurisdiction under CAFA. Municipal

Water Authority's motion to remand (ECF No. 18) and request for further jurisdictional discovery must, therefore, be denied.

An appropriate order will be entered.

BY THE COURT,

Dated: September 20, 2016                    /s/ JOY FLOWERS CONTI
                                             Joy Flowers Conti
                                             Chief United States District Judge