# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MUNICIPAL AUTHORITY** : **CIVIL ACTION NO. 2:16-CV-422** |
| **OF WESTMORELAND COUNTY,** : |
| on behalf of itself and all others : **(Chief Judge Conner)** |
| similarly situated, : |
| : |
| **Plaintiff** : |
| : |
| v. : |
| : |
| **CNX GAS COMPANY, LLC**, *et al.*, : |
| : |
| **Defendants** : |

## **MEMORANDUM**

Before the court is a motion (Doc. 87) to quash or, in the alternative, for protective order filed by defendant CNX Gas Company, LLC ("CNX") in response to the subpoenas (Docs. 87-5, 87-6, 87-7) issued by plaintiff Municipal Authority of Westmoreland County ("MAWC") to third parties CONE Midstream Partners LP ("CONE Midstream"), CONE Gathering LLC ("CONE Gathering"), and Joseph Fink ("Fink"). For the reasons that follow, the court will grant in part and deny in part CNX's motion to quash.

## I. Factual Background & Procedural History

MAWC commenced the instant class action on February 26, 2016 in Pennsylvania state court against defendants CNX and Noble Energy, Inc. ("Noble") (collectively, "defendants"). (Doc. 1 ¶ 1; Doc. 1-1). Defendants removed the case on April 11, 2016. (Doc. 1). MAWC filed an amended complaint on November 7, 2016. (Doc. 50). Therein, MAWC, on behalf of itself and all others similarly situated, alleges breach of contract and conversion claims against defendants. (Id.)

MAWC and defendants are parties to oil and gas leases under which MAWC receives royalty payments from CNX and Noble. (See id. at ¶¶ 12, 14, 17-20, 25-26; Doc. 88 at 4, Doc. 96 at 2). CONE Gathering provides "midstream gas gathering services" to CNX and Noble through CONE Midstream. (Doc. 50 ¶ 27). CONE Midstream is controlled by CNX, Noble, and CONE Gathering. (Id. at ¶ 28). CNX is owned by CNX Gas Corporation, which is a wholly owned subsidiary of CONSOL Energy, Inc. ("CONSOL"). (Doc. 88 at 1 n.1). MAWC contends that it is being underpaid because defendants are deducting post-production costs that are either prohibited under the leases altogether or are higher than allowed under the leases. (See Doc. 50 ¶ 57). MAWC also alleges that its royalty deductions are higher due to defendants' affiliation with CONE Gathering. (See Doc. 88 at 4).

On July 27, 2017—three days prior to the close of fact discovery—MAWC deposed Fink as an individual fact witness and as corporate designee for CONE Midstream and CONE Gathering pursuant to Federal Rule of Civil Procedure 30(b)(6). (See Doc. 78 at 14; Doc. 84 at 4:3-13; Doc. 87-1, Joseph M. Fink Dep. 1, 10:3-15) (July 27, 2017) ("Fink Dep.")). Fink is currently vice president of CONSOL's midstream operations as well as chief operating officer of CONE Midstream. (Fink Dep. 51:6-13). He has held those positions since 2012 and 2014, respectively. (Id. at 49:13-51:13). From 2011 to 2016, Fink also acted as president of CONE Gathering. (Id. at 51:14-52:19).

Fink testified during his deposition that he and others, including Jason Mumford ("Mumford"), were parties to a "series of emails" about "appropriate deduction[s]" from "royalty payments." (See id. at 308:24-309:16; 312:14-314:11).

2

Fink could not recall when the communications occurred but stated that he "thought" it was sometime prior to an audit of MAWC in December 2014 into early 2015. (See id. at 317:15-22). MAWC asked Fink to speak to the content of the emails but counsel for CNX objected on privilege grounds because CONSOL attorney Bridget Furbee ("Furbee") was a party to these communications. (See id. at 309:5-310:19, 314:19-315:23). MAWC requested that these emails be produced. (Id. 316:4-317:13).

On August 1, 2017, MAWC filed a motion to compel against CNX seeking production of the emails and further depositions of Fink and Mumford for the limited purpose of questioning related to same. (Doc. 81). The next day, at an already scheduled hearing before the court, counsel for CNX testified that CNX did not have the emails in its possession because its "normal document retention policy would not have documents from 2012." (See Doc. 84 at 2:3-6, 2:17-5:8). CNX admitted that the emails were "potentially. . . responsive" to a prior MAWC discovery request. (See id. at 3:14-21). The court denied the motion to compel based on CNX's representations and directed MAWC to file a third-party subpoena pursuant to Federal Rule of Civil Procedure 45. (See id. at 7:2-9:5). The court extended the deadline for fact discovery to afford MAWC an opportunity to review the emails and take related depositions, if necessary. (See id. at 9:6-14). CNX stated the emails may be privileged. (See id. at 8:9-23).

On August 7, 2017, MAWC served identical subpoenas on CONE Midstream, CONE Gathering, and Fink. (See Doc. 87-8; see also Doc. 87-5, 87-6, 87-7). Less than two weeks later, counsel for the subpoena recipients sent the responsive

3

emails to CNX and stated that they intended to produce the emails unless CNX wished to assert a privilege. (See Doc. 87-9). On August 28, 2017, CNX filed its instant motion to quash or, in the alternative, for protective order. (Doc. 87). MAWC responded in opposition on September 12, 2017. (Doc. 96). On October 11, 2017, the court directed CNX to produce the emails for *in camera* review. (Doc. 98). The court received the emails on October 20, 2017. The court has completed its review of the emails and the motion is fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 45 requires a court to quash or modify any subpoena that: (1) does not allow a reasonable compliance period; (2) seeks compliance beyond the geographic limits set forth elsewhere in the Rule; (3) requires a person to disclose privileged or protected matter in circumstances when waiver or other exceptions do not apply; or (4) subjects a person to an "undue burden." FED. R. CIV. P. 45(d)(3)(A). The moving party bears a "heavy burden" of demonstrating that an enumerated basis for quashing the subpoena exists. See Malibu Media, LLC v. John Does 1-15, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (citation omitted).[1]

---

[1] As a general rule, a motion to quash a third-party subpoena must be brought by the third party itself. See First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (quoting Thomas v. Marina Assocs., 202 F.R.D. 433, 434 (E.D. Pa. 2001)). This rule contains a narrow exception: a party may move to quash a third-party subpoena when the moving party claims a "personal right or privilege" in the subject matter of the subpoena. Id. (quoting Davis v. Gen. Accident Ins. Co., No. 98-4736, 1999 WL 228944, at *2 (E.D. Pa. Apr. 15, 1999)). The court finds that CNX has adequately alleged a privilege in the contents of the emails and thus has standing to move to quash.

4

**III. Discussion**

CNX avers that the emails are privileged communications between CONSOL employees and CONSOL attorneys regarding issues that required legal advice.[2] MAWC responds that communications to which attorneys are recipients are not automatically privileged and the court should independently review the content of each.[3] The court's *in camera* review of the emails reveals, as discussed *infra*, that only some contain privileged attorney-client communications.

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co.

---

[2] CNX also contends that the emails are irrelevant because they, *inter alia*, discuss "*which* wells are properly subject to the CONE gathering fee" as opposed to "*what* fee should be charged." (See Doc. 88 at 2 (emphasis added)). The court disagrees. Several of the emails directly discuss what fee should be charged. Additionally, counsel for CNX expressly admitted that the emails are "potentially . . . responsive" to one of MAWC's prior document requests. (See Doc. 84 at 3:14-21). Hence, the court finds the emails relevant. See generally FED. R. CIV. P. 26(b)(1).

[3] MAWC avers that the emails are not privileged because Fink was acting on behalf of CONE Gathering when he participated in the communications and there was no "joint client" relationship between Fink and the CONSOL attorneys. (See Doc. 96 at 4-11). The court recognizes that the presence of a third-party generally destroys the attorney-client privilege, see Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007), but Fink was not a third-party. The emails reveal that Fink drafted and received all the communications at issue to and from his CONSOL address. The record is also clear that Fink worked for *both* CONE Gathering and CONSOL at the time of the emails. (See Fink Dep. 50:23-52:19). The court's *in camera* review further reveals that all parties to the emails have CONSOL or CNX email addresses, with the exception of attorney Cole DeLancey from Steptoe & Johnson LLC who is copied on three email chains. (See CONE-MAWC 01376-01380; CONE-MAWC 01421-01423; and CONE-MAWC 01424-01426). The court finds that the mere email exposure to outside counsel or individuals with CNX email addresses did not destroy the privilege.

v. United States, 449 U.S. 383, 389 (1981).  While recognizing the value served by the privilege, courts must also be mindful that the privilege obstructs the truth-finding process; as such, it should be applied "only when necessary to achieve its purpose." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007); see also Westinghouse Elec. Corp. v. Repub. of Philippines, 951 F.2d 1414, 1423 (3d Cir. 1991).

Federal courts assess the application of the privilege on an individualized, case-by-case basis.  Wachtel, 482 F.3d at 230.  The protections afforded by this privilege extend to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting RESTATEMENT (THIRD) OF LAW GOVERNING LAW § 68 (2000)).  The privilege does not extend to communications where the attorney "provides non-legal business advice." Wachtel, 482 F.3d at 231; see also Audi of America, Inc. v. Bronsberg & Hughes Pontiac, Inc., 255 F. Supp. 3d 561, 569 (M.D. Pa. 2017).  It also does not extend to the facts underlying the communication.  See Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 305 (D.N.J. 2008) (citing Upjohn, 449 U.S. at 395-96).  Attachments to emails must be independently reviewed for privilege.  See Idenix Pharms., Inc. v. Gilead Scis., Inc., 195 F. Supp. 3d 639, 644 n.5 (D. Del. 2016). The party asserting the privilege bears the burden of proving its application.  See In re Grand Jury Empaneled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

Several of the documents are clearly not privileged.  Two, identified by their CONE-MAWC Bates Stamp, contain emails solely between CONSOL employees and thus are non-privileged communications between colleagues: CONE-MAWC

6

01304 (all emails dated January 9, 2012) and CONE-MAWC 01368[4] (emails between Fink and Alexander Reyes). The third is a communication between CONSOL employees in which one or more attorney is listed as a recipient, but no attorney is contributing to the exchange, much less providing legal advice: CONE-MAWC 01427-01430.[5] The rest are unprivileged data attached to an otherwise privileged email or logistical communications: CONE-MAWC 01311-01312; CONE-MAWC 01331-01367; CONE-MAWC 01370 (the first two emails in the chain only); and CONE-MAWC 01381-01417.

A number of the emails concern general business discussions. After a thorough review, the court finds that the following emails and their corresponding attachments are not privileged communications because (to the extent Furbee is contributing) Furbee is giving business rather than legal advice: CONE-MAWC 01296-01298; CONE-MAWC 01299; CONE-MAWC 01300-01303; CONE-MAWC 01304-01306; CONE-MAWC 01307-01308 (except for content of January 12, 2012 email sent by Furbee at 2:36 p.m.); CONE-MAWC 01309-01312 (except for content of

---

[4] The version produced to the court has been redacted. If possible, an unredacted version should be produced to MAWC.

[5] The court notes that the attachment to the email is a letter that is publicly available on the docket. (See Doc. 87-3).

January 12, 2012 email sent by Furbee at 4:41 p.m.); CONE-MAWC 01313-01315; CONE-MAWC 01322-01328; CONE-MAWC 01329; and CONE-MAWC 01368.[6]

The remaining emails, in whole or in part, are privileged communications. Those communications are contained in documents: CONE-MAWC 01307 (content of January 12, 2012 email sent by Furbee at 2:36 p.m.); CONE-MAWC 01309 (content of January 12, 2012 email sent by Furbee at 4:41 p.m.); CONE-MAWC 01316-01318; CONE-MAWC 01319-01321; CONE-MAWC 01330; CONE-MAWC 01369; CONE-MAWC 01370-01372 (except for the first two emails on the chain); CONE-MAWC 01373-01375; CONE-MAWC 01376-01380; CONE-MAWC 01418; CONE-MAWC 01419-01420; CONE-MAWC 01421-01423; and CONE-MAWC 01424-01426.

---

[6] CNX submits that attorney Steve Johnson ("Johnson"), general counsel for CONSOL, is also a recipient of several emails. (See Doc. 88 at 8, 12). Johnson does not author any of the emails at issue and no questions are directly posed to him by CONSOL employees. Copying an attorney to correspondence does not automatically render it a privileged communication. See, e.g., *In re* Human Tissue Prods. Liab. Litig., 255 F.R.D. 151, 164 (D.N.J. 2008). Thus, the court focuses its analysis on Furbee.

**IV.	Conclusion**

For all of these reasons, the court will grant in part and deny in part CNX's motion to quash.[7] An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER<br>
Christopher C. Conner, Chief Judge<br>
United States District Court<br>
Middle District of Pennsylvania

Dated:	December 20, 2017

---

[7] The court denies CNX's motion, in the alternative, for a protective order. The record is clear that counsel for the subpoena recipients has identified the responsive documents and is able to produce them. (See Doc. 87-9). Further, the court's *in camera* review of the emails does not indicate that producing the emails would be an "annoyance, embarrassment, oppression, or undue burden or expense" as outlined in Federal Rule of Civil Procedure 26(c)(1).